March 15, 2015

Honorable Judge Mauskopf and Magistrate Mann

Attached was emailed to the addresses shown on page 3.

I had assumed I would be able to obtain the email address of your clerk but Ms. Pescatore explained that was not possible per court rule.

I apologize for my breach of protocol.

John Dirnberger
San Clemente, California

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 19 2015 ★
BROOKLYN OFFICE

Attached is a draft letter I initially intended to sign and distribute electronically by email. I apologize for its poor form.

I abandoned it in draft, because even I can see it is legally deficient and weightless coming from me. I was just strongly compelled to raise what I feel are enormously substantive issues.

Take it for what it is, simply one frustrated person's statement that he and others believed in the vision and bright prospects of a company that could succeed selling socially desirable educational products to a world so in need of it, backed the belief in that vision financially, and now fail to see anyone representing the full range of our interests in these civil proceedings.

(Unfortunately I do not have the email address for Judge Mauskopf or Magistrate Mann, which I cannot call to get until tomorrow. Perhaps Mr. Maher would kindly forward this to their clerks.)

# DRAFT

Drafted Mar 14, 2015

Honorable Roslynn R. Mauskopf,
Honorable Roanne L. Mann,
Eastern District Court of New York

Daniel Maher, Esq., U.S. Securities and Exchange Commission
Mr. Howard Shern and Ms. Florence Leung, Defendants
Counsels for Remaining Defendants in Case 13-5584

Amicus Curiae Plea, Civil Action No. 13-5584

In Memorandum and Order dated September 30, 2014 (Docket # 170), Judge Mauskopf denied my request for intervener status (Docket # 146) for being procedurely and substantively defective. I had filed for that status because it appeared to me, based on court proceedings to that point in time, essential information had not been introduced into the proceedings, and that my financial interests and that of many others in my investor class were not being adequately represented by any of the parties to the action, and thus in peril. The SEC, in opposing my request, said I would delay the proceedings, and that the other defendants in the case, with their legal counsel, were fully capable of defending themselves and thus my interests. In the Memorandum and Order to deny intervener status, her honor stated how under *parens patriae* courts now presume the SEC is adequately protecting all investor interests.

I have since followed this case as best I can using PACER, with an eye on how CKB investor interests are represented. I am now more alarmed than before, and plead everyone's indulgence to consider the following, which explains my alarm:
1. My large investor class saw great potential profitability in bringing the CKB educational products to the digital marketplace. We foresaw a high demand for these products in the Asian marketplace, and believed we would derive our return on investment through ownership of CKB stock.
2. We relied on Mr. Shern and Ms. Leung, as chief business officers of CKB, to bring CKB to the marketplace and to an IPO, and now we rely on them to represent our interests in these proceedings, but yet have seen any inclination or capability to do that. They may have a greater concern to protect themselves due to other possible personal liability.

# D R A F T

3. There appears to be virtually the same conflict of interest between that of our large investor class and that of the other defendants in this case.
4. As to the SEC, I see no *parens patriae* protection of our interest. The SEC seems not to discern any possibility of legitimacy in CKB, without which there is no hope of an IPO and investment return from the marketplace. The SEC simply has not had to meet fair challenges by legitimate interests silenced on procedural technicalities trivial in comparison to the huge number of people with significant personal finances at stake. This is most clearly exemplified by the following.
5. The SEC states their expert witness, Dr. Vander Nat, concludes CKB is a fraudulent pyramid scheme deriving income only from CKB investment units, and points to its pyramid structure for the award of bonuses. First, by totally ignoring potential future revenue from the sale of CKB products yet to be released in the marketplace, he naturally projects a massive investment loss. Any fair analysis, on the other hand, would include future potential revenue and arrive at the exact opposite, a potentially huge profitable return. What makes the CKB pyramid bonus structure any different from that of Amway? Who is raising these questions or challenges on our behalf?
6. Somewhere within CKB ownership is title to extremely valuable intellectual property rights in the digital educational courses ready for market. The SEC has actually denied the existence of these courses, another claim that has gone unchallenged. The SEC and its expert seem focused solely on money in the bank from the sale of "business packs", relative pocket change. Greater CKB investor interest lies in the protection of ownership and control of intellectual property rights and the ability to garner an investment return from their sale in the marketplace.
7. If the SEC is truly *parens patriae*, it should consider all viable alternatives to simply distributing cash on hand to investors, which its own expert says will result in loss to 96% of investors. It is arguably quite possible for CKB to quickly restructure and get back on track as the legitimate business venture CKB investors believed it to be before certain individuals misbehaved and caused this civil action. CKB officers can easily simply stop the MLM sales of business investment units and begin selling CKB products in the retail market. The de facto existence of valuable intellectual property rights ready to meet an anticipated high demand in the Asian marketplace is what makes a restart so viable a possibility.
8. The SEC expert witness counts the number of CKB investors at over 65,000. Consider just that, tens of thousands of individuals, often an entire family, behind each and every one of those numbers. It would be beyond tragic should those interests not be recognized and adequately served by the court and the parties to this action.

# D R A F T

We therefore earnestly plead in the name of simple fairness, that your honors and all parties give due consideration to the above and take these remedial actions:

- The Court exercise forbearance and allow and encourage the parties to make one last good faith attempt at settlement.
- The SEC review the conclusions of its expert witness and its own contention that CKB cannot possibly function as a legitimate entity.
- Defendants Shern and Leung step up to the plate on behalf of investors and develop a plan acceptable to the SEC that removes illegality and puts CKB back on track as a legitimate business venture.
- Remaining defendants also go beyond narrow self interest to help settle this matter for the greater good of all investors, which ultimately includes themselves.

It is clearly best if this issue is ultimately resolved in a manner agreeable to the parties. What is an additional few weeks or even months if that can be achieved to minimize or completely offset financial harm to 65,000 individuals.

Respectfully yours, on behalf of numerous CKB investors,

(Unsigned draft)

John R. Dirnberger
614 Via Espiritu
San Clemente, CA 92672

jdirn42@gmail.com

Copies of this document are being sent to the email addresses of record to those specifically addressed in this document, and to counsels of record for the following:

Ms. Rayla Melchior Santos, jfrenkel@shulamnrogers.com
Mr. David Guo,           jg@asfirm.com
Ms. Kiki Lin              "
Ms. Wendy Lee             "
Mrs. JC Ma                "
Mr. Yao Lin               "
Mrs. Toni Chen            peiwen_chang@cnc.law
Mr. Heywood Chang         "
Ms. Heidi Mao             Michael.frevola@hklaw.com