**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE COMMISSION,  :

          *Plaintiff,*  :

          v.  :

CKB168 HOLDINGS LTD., ET AL.  :  **CASE NO.13-cv-5584 (RRM)**
                                                **(RLM)**

          *Defendants,*  :

    -  AND  -  :

                                       **FILED**
ROSANNA LS INC., ET AL.  :  IN CLERK'S OFFICE
                                 US DISTRICT COURT E.D.N.Y.

          *Relief Defendants.*  :  ★  JUL 1 0 2015  ★

                                   BROOKLYN OFFICE

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S NOTICE OF FILING**
**OF DEFENDANT RAYLA MELCHOR SANTOS CONSENT AND JUDGMENT**

      **PLEASE TAKE NOTICE** that Plaintiff Securities and Exchange Commission ("SEC")

is filing contemporaneously with this notice the executed Consent and Proposed Judgment for

defendant Rayla Melchor Santos. Entry of the Proposed Judgment will resolve defendant

Santos's liability, with disgorgement, prejudgment interest and civil penalty to be determined by

the Court at a later date, upon motion of the SEC. The SEC respectfully requests the Court to

enter the Proposed Judgment as to defendant Rayla Melchor Santos.

Dated: February 12, 2015

                                          /s/ Daniel J. Maher
                                          Daniel J. Maher
                                          Assistant Chief Litigation Counsel
                                          U.S. S.E.C.

100 F Street, NE
Washington, DC 20549
Tel: (202) 551-4737
Email: maherd@sec.gov
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on February 12, 2015, a true and correct copy of the *foregoing* was filed with the Clerk of the Court via ECF in accordance with the Federal Rules of Civil Procedure:.

Peiwen Chang
Cogswell Nakazawa & Chang, LLP
444 W. Ocean Blvd., Ste. 1410
Long Beach, CA 90802
Peiwen_Chang@cnc-law.com
Attorney for:
      *Toni Tong Chen*
      *Cheongwha ("Heywood") Chang*
              Defendants

    and

      *HTC Consulting Inc.*
      *Arcadia Business Consulting, Inc.*
              Relief Defendants


Michael Joseph Frevola
Francis Robert Denig
Holland & Knight
31 West 52nd Street
New York, NY 10019
michael.frevola@hklaw.com
robert.denig@hklaw.com
Attorneys for:
      *Heidi Mao Liu (AKA "Heidi Mao")*
              Defendant

Suzan Jo
Marvin Pickholz
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086
sjo@duanemorris.com
Attorneys for:
      *CKB168 Holdings Limited*

> *CKB168 Limited*
> *WIN168 Biz Solutions Limited*
> *CKB168 Biz Solution, Inc.*
> *Cyber Kids Best Education Limited*
> *Hung Wai ("Howard") Shern*
> *Rui Ling ("Florence") Leung*
> > Defendants

John Golaszewski
Schiller Law Group, PC
130 W. 42nd Street
Suite 10002
New York, NY 10036
jg@asfirm.com
Attorney for:
> *Daliang (David) Guo*
> *Wen Chen Hwang (Aka "Wendy Lee")*
> *Yao Lin*
> *Joan Congyi Ma (AKA "JC Ma")*
> *Chih Hsuan ("Kiki") Lin*
> > Defendants
>
> *Rosanna LS Inc.*
> *Ouni International Trading Inc.*
> *EZ Stock Club Corp.*
> *E Stock Club Corp.*
> *USA Trade Group Inc*
> > Relief Defendants


Jacob Frenkel
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, 6th Floor
Potomac, MD 20854
jfrenkel@shulmanrogeres.com
Attorney for:
> *Rayla Melchor Santos (aka "Teacher Sam")*

> > > > */s/   Daniel Maher   *
> > > > Daniel Maher

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| *Plaintiff*, | : |
| v. | :     13-cv-5584 (RRM)(RLM) |
| CKB168 HOLDINGS LTD., ET AL. | : |
| *Defendants*, | : |
| - AND - | : |
| ROSANNA LS INC., ET AL. | : |
| *Relief Defendants*. | : |

## CONSENT OF DEFENDANT RAYLA MELCHOR SANTOS

1.    Defendant Rayla Melchor Santos ("Defendant") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over her and over the subject matter of this action.

2.    Defendant hereby admits the facts contained in Annex A, Admissions of Defendant Rayla Melchor Santos, attached hereto, and Defendant admits the allegations in the Complaint as to personal and subject matter jurisdiction and consents to the entry of the Judgment in the form attached hereto (the "Consent Judgment") and incorporated by reference herein, which, among other things:

(a) permanently restrains and enjoins Defendant from violation of Section 17(a)(1) and (3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(1) and (3)]; Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") [15 U.S.C.

1

§ 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)]; and Section 5 of the Securities Act [15 U.S.C. § 77e]; and,

(b) permanently restrains and enjoins Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendant, offering, operating, or participating in any marketing or sales program involving a security, including but not limited to a program in which a participant is compensated or promised compensation solely or primarily (1) for inducing another person to become a participant in the program, or (2) if such induced person induces another to become a participant in the program.

3.      Defendant agrees that the Court will order disgorgement of ill-gotten gains, and prejudgment interest thereon, and Defendant agrees that the Court will impose a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. Defendant further agrees that the amounts of the disgorgement and civil penalty shall be determined by the Court upon motion of the Commission, and that prejudgment interest shall be calculated from October 9, 2013, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). Defendant further agrees that in connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that she did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this Consent or the Consent Judgment; (c) the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule

56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

      4.     Defendant acknowledges that any civil penalty paid pursuant to a Final Judgment in this case may be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, the civil penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant agrees that she shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that she is entitled to, nor shall she further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant agrees that she shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

      5.     Defendant agrees that she shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays

pursuant to a Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that she shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to a Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

6.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

7.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Consent Judgment.

8.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

9.      Defendant agrees that this Consent shall be incorporated into the Consent Judgment with the same force and effect as if fully set forth therein.

10.     Defendant will not oppose the enforcement of the Consent Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11.     Defendant waives service of the Consent Judgment and agrees that entry of the Consent Judgment by the Court and filing with the Clerk of the Court will constitute notice to her of its terms and conditions.

4

12.      Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability.  Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that she shall not be permitted to contest the factual allegations of the complaint in this action.

13.      Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings."  As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant:  (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; (ii) will not

5

make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the Complaint, or that this Consent contains no admission of the allegations; and (iii) upon the filing of this Consent, Defendant hereby withdraws any papers previously filed in this action to the extent that they deny, directly or indirectly, any allegation in the Complaint.  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Consent Judgment and restore this proceeding to its active docket.  Nothing in this provision affects Defendant's:  (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

14.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by her to defend against this action.  For these purposes, Defendant agrees that she is not the prevailing party in this action since the parties have reached a good faith settlement.

15.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints her undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on

6

service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony arranges for or reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over her in any United States District Court for purposes of enforcing any such subpoena.

16.    Defendant agrees that the Commission may present the Consent Judgment to the Court for signature and entry without further notice.

17.    Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Consent Judgment.

Dated: _December 19, 2014_


_____
Rayla Melchor Santos


    On _DEC 19 2014_, 2014, _____, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.


DOC. NO. _109_
PAGE NO. _23_
BOOK NO. _12_
SERIES OF 20 _14_

Notary Public
Commission expires:

ATTY. CONCEPCION M. JUATAS
NOTARY PUBLIC
UNTIL DEC. 31, 2015
APPT #74-2011, ATTY'S ROLL #15860
PTR NO. 10074627-P'QUE CITY
IBP NO. 932408-1 IN NO. 303-205-640
MCLE COMPLIANCE NO. IV-001922-9/12
NO. 31 AGUIRRE AVE., BF HOMES
PARAÑAQUE CITY, PHILIPPINES
TEL. NO. 8078735/8074704

Approved as to form:

_____
Jacob S. Frenkel, Esq.
Shulman, Rogers, Gandal, Pordy & Ecker, PA
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854-6803
Tel: 301-230-5214
Fax: 301-230-2891
jfrenkel@shulmanrogers.com
_Attorney for Defendant Rayla Melchor Santos_

7

## ANNEX A
## Admissions of Defendant Rayla Melchor Santos

Defendant Rayla Melchor Santos ("Defendant Santos") admits to the facts set forth below and acknowledges that her conduct violated the federal securities laws:

### Background

1.  Defendant Santos was born in 1956 and is a citizen of the Republic of the Philippines. Defendant Santos currently resides in Muntinlupa City, Philippines.

2.  Defendant Santos has a background in education and was the principal of an elementary school in the Philippines from approximately 2006 through 2012.

3.  Defendant Santos met Defendant Howard Shern ("Defendant Shern") in approximately 2008 when they were both members of a nutritional supplements multi-level marketing ("MLM") company based in the United States. Through Defendant Shern, Defendant Santos came to know Defendant Florence Leung (Defendant Leung"), who was "down-line" from Defendant Shern in that MLM company. As Defendant Santos understood, in MLM terminology, a "down-line" is a member who is placed below an existing member within that person's sale's team.

4.  Defendant Santos, together with Defendants Shern and Leung, have used the names CKB, CKB168, CKBMax, and Cyber Kids Best to refer to a group of companies, including, but not limited to, Defendants CKB168 Holdings Ltd., WIN168 Biz Solutions Ltd., CKB168 Ltd., CKB168 Biz Solution, Inc., and Cyber Kids Best Education Ltd. (collectively, hereinafter, "CKB").

5.  Defendant Santos first became involved with the concept that became CKB in approximately January 2011, when Defendant Shern approached her with a proposal that

1

she find investors for a not-yet-formed MLM company that Defendant Shern was
contemplating creating.

6.      Defendant Shern told Defendant Santos that this company would sell computer-based
English as a second language ("ESL") courses for children in Hong Kong and China
through a distribution agreement with Cackleberries International ESL Corporation
("Cackleberries"). Defendant Santos subsequently learned in approximately March 2011
that Cackleberries had not granted Defendant Shern permission to sell its courses in
China.

7.      Defendant Santos agreed to invest into the venture US$150,000 of her own money, which
she obtained by mortgaging her personal residence. Defendant Santos came to learn that
there were additional investors, including Defendant Leung, who invested US$50,000.
Defendant Shern later informed Defendants Santos and Leung that their investments
would be converted to loans to the company that would be repaid to them with an interest
rate of 20%.

8.      Defendant Santos is aware that Defendant Shern named the company WIN168 Biz
Solutions Ltd. ("WIN168") and had it incorporated in Hong Kong in approximately
March 2011. Defendant Santos received a shareholder agreement reflecting that
Defendant Shern owned shares representing 65.22% of WIN168, Defendant Santos
owned shares representing 16.30%, and Defendant Leung owned shares representing
5.43%. Defendant Santos understood that Defendants Shern, Leung, and Santos were
directors of WIN168 along with two other individuals.

9.      In approximately April 2011, Defendants Santos learned that Defendants Shern and
Leung opened bank accounts in Hong Kong in order to conduct CKB business.

2

Defendant Santos also learned that Defendants Shern and Leung were named as the signatories on those accounts.

10.    Thereafter, Defendant Santos learned that Defendants Shern and Leung created additional business entities in Hong Kong, the British Virgin Islands, Malaysia, and Canada, and that they used those entities to conduct CKB business.

## The Scheme

11.    Defendant Santos became familiar with the structure and marketing of CKB based on her role in assisting Defendants Shern and Leung with the creation and development of CKB, as well as her interactions with CKB promoters in the United States, including, but not limited to Defendants David Guo ("Defendant Guo"), Yao Lin ("Defendant Yao Lin"), Kiki Lin ("Defendant Kiki Lin"), Wendy Lee ("Defendant Lee"), Joan Congyi Ma ("Defendant Ma"), Heywood Chang ("Defendant Chang"), Toni Chen ("Defendant Chen"), and Heidi Mao ("Defendant Mao").

12.    Defendant Santos understood from her communications with Defendants Leung and Shern that Defendant Leung was CKB's Chief Financial Officer and was primarily responsible for managing CKB's finances, collecting funds from investors into CKB bank accounts, paying salaries and other business expenses, and paying commissions to CKB promoters.

13.    Defendant Shern's official title is CKB's International Marketing Director.  However, based on her communications with Defendants Shern and Leung, Defendant Santos understood that he was responsible for designing and implementing the entire structure of CKB, including but not limited to creating and drafting the CKB compensation plan and marketing materials.

3

14.   Defendant Santos also understood from communications with Defendants Shern and Leung that Defendant Shern was the individual primarily responsible for the content of the CKB website, including the back office accounts accessible to CKB members. Defendant Santos knew that the CKB website has, at various times, been located at www.ckb168.com and www.ckbmax.com.

15.   Defendant Santos agreed with Defendant Shern to have the title of "founder" of CKB. Defendant Santos understood that her background and reputation as an educator was being used to lend legitimacy to CKB.

16.   According to the CKB website and marketing materials Defendant Santos saw, CKB was purportedly a successful MLM company based in Hong Kong that earned revenue by selling online educational courses for children through a network of distributers that distributed CKB's products throughout Asia, Canada, and the United States.

17.   However, Defendant Santos was at least reckless in not knowing that CKB was a pyramid scheme. Based on her prior involvement in MLM companies, Defendant Santos knew that the business of a MLM company had to focus primarily on selling a real product to real end consumers in order to avoid being an illegal pyramid scheme.  In fact, in approximately March 2011, Defendant Santos sent Defendant Shern a set of draft policies and procedures that specified that a legitimate MLM company "pays distributors commission based on product sales, NOT on recruiting people."

18.   Yet Defendant Santos understood that according to the compensation plan, CKB sold its products only to CKB members as part of a "business pack" that included "profit reward points" ("Prpts") purportedly worth US$750.  She also understood that the commissions paid to CKB members were generated exclusively from the sales of business packs to

4

new and existing CKB members, and that no commissions were paid for retail sales of
CKB products to non-CKB members.

19.     Defendant Santos understood that CKB had attempted to sell courses wholesale to non-
CKB members in China, but, as far as she knew, these attempts had been unsuccessful.
Defendant Santos is aware of no actual retail sales of CKB products to non-CKB
members.

20.     Defendant Santos knew from her communications with Defendants Shern and Leung that
the majority of CKB investors were not using the product.  In fact, Defendant Santos
learned from Defendant Shern that only a small percentage of the courses "purchased" as
part of the business pack had ever been activated.

21.     Defendant Santos is aware of repeated technical issues with the courses CKB purportedly
sold.  For instance, she knew that the Memory Max program was released for "sale" more
than a year before it was complete and, as a result, many complaints were received about
the product.  Defendant Santos received multiple communications from the program
designer telling her to instruct Defendant Shern to stop selling an incomplete program.
However, when Defendant Santos spoke with Defendant Shern, he refused to stop.

22.     Defendant Santos observed Defendants Shern, Guo, Yao Lin, Kiki Lin, Lee, Chang, and
Chen, along with other CKB promoters, promise US investors that Prpts would increase
in value exponentially and ultimately could be converted to shares of CKB in advance of
the advertised initial public offering ("IPO") of CKB on the Hong Kong stock exchange
in 2014.  In fact, however, Defendant Santos was aware that Prpts could not be converted
to real money.

5

Case 1:13-cv-05584-RRM-RLM   Document 217-1   Filed 02/12/15   Page 13 of 18 PageID #: 3350

23.    Defendant Santos is aware of no application made by CKB or any affiliated entity to be listed on the Hong Kong stock exchange.  Although Defendants Shern and Leung have told Defendant Santos that they had taken steps to take the company public, Defendant Santos has never seen any documents or communications to corroborate these claims.

### Defendant Santos's Participation in the Scheme

24.    Defendant Santos traveled throughout the United States, Canada, and Asia to promote CKB alone and with Defendant Shern, on several occasions between approximately July 2011 and September 2013.  Defendant Santos traveled to various cities in the United States at the request of Defendant Shern, including New York, San Francisco, Los Angeles, Philadelphia, Maryland, and Atlanta.

25.    During these promotional visits, Defendant Santos met with and spoke to groups of CKB investors and prospective investors, introducing herself as "the founder" of CKB and describing CKB as a legitimate MLM company that sells children's educational products.

26.    Defendant Santos took instruction from Defendant Shern on what to say to investors and prospective investors about CKB.  Defendant Santos had no knowledge of CKB's financial position and had never seen any financial statement, audit report, or tax return for any CKB entity.

27.    Defendant Santos attended CKB promotional events in the United States with all Defendants except for Defendant Leung.  Certain promotional events were conducted in Chinese, while others were conducted in English.  In connection with her promotion of CKB in the United States, Defendant Santos dealt directly with Defendants Shern, Guo, Yao Lin, Kiki Lin, Lee, Chang, Chen, Ma, and Mao, as well as other CKB promoters.

28.    Defendant Santos saw English-language marketing material used in the United States that
focused almost entirely on the enormous profit potential for investors.  Defendant Santos
observed Defendants Shern and Chang give the English presentations which also
emphasized primarily the money-making opportunity presented by CKB.  For instance,
Defendant Santos observed Defendant Shern present CKB marketing material that touted
CKB's planned IPO and compared it to other famous IPOs, such as Google and
Facebook.  Defendant Santos also observed Defendant Shern distributing an English
language booklet stating that "the successful listing of technology companies has created
a large group of initial public offering investors with tenfold or even hundredfold in
returns."

29.    An English page from the CKB website stated "we will be publicly listed in the
international stock market and give stock rights back to the deserving top producers and
promoters of the company."  Yet Defendant Santos knew from her communications with
Defendants Shern and Leung that CKB was not authorized to sell stock.  In fact,
Defendant Santos participated in communications in which she learned that Defendants
Shern and Leung had previously issued CKB stock to investors sometime in 2011.  In
these communications, Defendant Santos was told by Defendants Shern and Leung that
CKB did not meet the necessary regulatory requirements and was attempting to retrieve
the stock certificates from those investors.

30.    On several occasions, Defendant Santos shared the stage with Defendants Shern, Guo,
Kiki Lin, Lee, and Chang at CKB promotional events.  Defendant Santos knew that her
presence and background as an educator was being used to lend credibility to these
presentations.

7

31.    At these events, Defendant Santos encouraged members of her audience to join CKB as distributors, which were called "online marketing angels" ("OMAs"), a term crafted by Defendant Shern. Defendant Santos also encouraged existing OMAs to recruit new OMAs to CKB.

32.    In approximately November 2012, Defendant Santos, together with Defendant Shern, was invited to and did participate with Defendant Kiki Lin to stage and record an "interview" in which Defendant Kiki Lin pretended to be a news anchor interviewing Defendants Santos and Shern about CKB. Defendant Santos knew that this recording would be made available to CKB investors and prospective investors.

33.    From the beginning, Defendant Santos had concerns about the manner in which CKB was being marketed and she communicated these concerns to Defendants Shern and Leung.

34.    For instance, Defendant Santos was concerned that CKB was not sufficiently product-driven. On several occasions, Defendant Santos told Defendant Shern that she believed both the CKB website and the marketing materials focused too much on the money-making opportunity of CKB and not enough on the product. However, Defendant Shern dismissed her concerns and told her that she was too "Western" in her business views.

35.    Defendant Santos also became aware that some CKB promoters in the United States were promoting CKB solely as an investment. Defendant Santos discussed this with Defendant Shern on multiple occasions.

36.    For instance, in approximately August 2012, Defendant Santos became aware that CKB was being promoted as an investment on the website, www.estockclub.com. Defendant Santos emailed the link to Defendants Shern and Leung with the message, "I know this is not good for us." Defendant Shern later told Defendant Santos that this website belonged

8

to Defendant Lee and that he had asked Defendant Lee to take the website down. Defendant Santos did not confirm whether the website was ever removed.

37. Sometime in 2012 or early 2013, Defendant Shern told Defendant Santos that he had noticed some improper promotional videos of CKB that had been posted to the internet. On another occasion, in 2012, Defendant Shern told Defendant Santos that he was concerned that Defendant Kiki Lin was not promoting CKB appropriately and that he intended to speak with her about it.

38. Thereafter, Defendants Santos continued to participate and share the stage with Defendant Shern and CKB promoters, including Defendants Lee and Kiki Lin, at CKB promotional events in the United States. Defendants Santos never made any public statement correcting the representations by Defendants Lee or Kiki Lin about the CKB investment, and is not aware that Defendant Shern ever did so. Moreover, Defendant Santos was aware that Defendants Shern and Leung continued to accept CKB investor funds from CKB promoters in the United States, including Defendants Lee and Kiki Lin and their down-lines.

39. Beginning in approximately October 2012, Defendants Santos, Shern, and Leung received a series of emails from the highest ranking CKB promoter in the United States. In these emails, Defendants Santos, Shern, and Leung were told that CKB had been accused of being a "scam business" in a New York-based Chinese language newspaper.

40. In approximately November 2012, Defendant Santos learned of a posting to www.topix.com, a website based out of Southern California, alleging that CKB was a "Ponzi scam." Defendant Santos communicated about this posting with Defendants Shern and Leung. Defendants Santos and Shern coordinated with another CKB

9

employee to draft an email requesting that the posting be removed. In approximately January, 2013, Defendant Santos learned that the posting had successfully been removed from the website.

41.     From approximately November through December 2012, a series of articles were published in the Hong Kong newspapers alleging that CKB might be a "pyramid scheme." Defendants Santos, Shern, and Leung communicated with each other and CKB promoters in the United States about these allegations. Defendants Santos, Shern, and Leung communicated with each other about attempting to remove these allegations from the internet.

42.     Apart from conferring with other scheme participants to assure herself about CKB's legitimacy, Defendant Santos did nothing independently to look into the allegations that CKB was a "scam" or a pyramid scheme. Thereafter, Defendant Santos continued to promote CKB to investors and received compensation which was paid out of their investments.

### Defendant Santos's Receipt of CKB Investor Funds

43.     Defendant Santos received compensation in exchange for promoting CKB as its "founder." This compensation came in the form of commissions from early CKB investors, a monthly salary of US$4,000, and an annual dividend for the first year of her participation. In addition, Defendant Santos received reimbursement of travel expenses and repayment of her US$150,000 loan to CKB along with 20% interest. These payments were made by Defendant Leung from the CKB business accounts into which CKB investors made their deposits. Defendant Santos received these payments as wire transfers directly into her US dollar bank account.

10

## Conclusion

44.    The conduct described above was undertaken by Defendant Santos in connection with the purchase, offer, or sale of securities.

45.    The conduct described above constitutes violations of the federal securities laws.

46.    Defendant Santos acted at least recklessly in connection with the violations described above.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge.

Executed on _____December 19_____, 2014

Rayla Melchor Santos

ATTY. CONCEPCION M. JUATAS
NOTARY PUBLIC
UNTIL DEC. 31, 2015
APPT #74-2011, ATTY'S ROLL #15860
PTR NO. 10074627-P'QUE CITY
IBP NO. 932408-1 TIN NO. 303-205-640
MCLE COMPLIANCE NO. IV-0019224-9/12
NO. 31 AGUIRRE AVE., BF HOMES
PARAÑAQUE CITY, PHILIPPINES
TEL. NO. 8078735/8074704

11

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| *Plaintiff,* | : | |
| v. | : | 13-cv-5584 (RRM)(RLM) |
| CKB168 HOLDINGS LTD., ET AL. | : | |
| *Defendants,* | : | |
| - AND - | : | |
| ROSANNA LS INC., ET AL. | : | |
| *Relief Defendants.* | : | |

## CONSENT JUDGMENT AS TO DEFENDANT RAYLA MELCHOR SANTOS

**WHEREAS,** the Securities and Exchange Commission having filed a Complaint and Defendant Rayla Melchor Santos ("Defendant") having entered a general appearance; admitted the allegations of the Complaint as to personal and subject matter jurisdiction; executed the Consent attached hereto and incorporated herein for the purposes of settling the Actions before the Court; consented to entry of this Consent Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from this Consent Judgment; and

**WHEREAS** Defendant admits to the facts set forth in Annex A to the Consent of Defendant Rayla Melchor Santos. The Consent of Defendant Rayla Melchor Santos and Annex A are hereby incorporated by reference with the same force and effect as if fully set forth herein.

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with her who receive actual notice of this Consent Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) promulgated thereunder [17 C.F.R. § 240.10b-5(a) and (c)], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

     (a)    to employ any device, scheme, or artifice to defraud; or

     (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with her who receive actual notice of this Consent Judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 17(a)(1) and (3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(1) and (3)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

     (1)    to employ any device, scheme, or artifice to defraud; or

     (3)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

2

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with her who receive actual notice of this Consent Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption:

    (a)    Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

    (b)    Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

    (c)    Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

3

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant

is permanently restrained and enjoined from directly or indirectly, including, but not limited to,

through any entity owned or controlled by Defendant, offering, operating, or participating in any

marketing or sales program involving a security, including but not limited to a program in which

a participant is compensated or promised compensation solely or primarily (1) for inducing

another person to become a participant in the program, or (2) if such induced person induces

another to become a participant in the program.

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant

shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and Defendant shall pay

a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section

21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Court shall determine the amounts of

the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall

be calculated from October 9, 2013, based on the rate of interest used by the Internal Revenue

Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In

connection with the Commission's motion for disgorgement and/or civil penalties, and at any

hearing held on such a motion: (a) Defendant will be precluded from arguing that she did not

violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge

the validity of the Consent or this Consent Judgment; (c), the allegations of the Complaint shall

be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised

in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or

investigative testimony, and documentary evidence, without regard to the standards for summary

4

judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with

the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery,

including discovery from appropriate non-parties.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is

incorporated herein with the same force and effect as if fully set forth herein, and that Defendant

shall comply with all of the undertakings and agreements set forth therein.

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Consent Judgment.

VIII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Consent Judgment forthwith and without further

notice.

Dated: _____7/9_____, 2015

s/Roslynn R. Mauskopf

UNITED STATES DISTRICT JUDGE

5