UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CKB168 HOLDINGS, LTD., et al.,<br><br>Defendants,<br><br>- and -<br><br>ROSANNA LS INC., et al.<br><br>Relief Defendants. | **MEMORANDUM & ORDER**<br>13-cv-5584 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

Before the Court is the Securities and Exchange Commission's ("SEC") motion for a Permanent Injunction, Financial Remedies, and Final Judgment against CKB168 Holdings, Ltd., WIN168 Biz Solutions Ltd., CKB168 Ltd., CKB168 Biz Solution, Inc., Cyber Kids Best Education Ltd. (collectively, the "Entity Defendants"), Rayla Melchor Santos, Hung Wai Shern, Rui Ling Leung, Daliang Guo, Yao Lin, and Joan Congyi Ma (Guo, Lin, and Ma are collectively referred to as the "Promoter Defendants") and against Relief Defendants Rosanna LS Inc. and Ouni International Trading Inc. (collectively, "Relief Defendants") pursuant to Fed R. Civ. P. 54 (the "Motion"). The Entity Defendants, Promoter Defendants, and Relief Defendants are collectively referred to herein as "Defendants."

For the reasons set forth below, the SEC's Motion is GRANTED.

**I. Background**

The SEC filed this case as an emergency action on October 9, 2013[1] alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder; Section 17(a)(1) and (3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a)(1), (3); and Section 5 of the Securities Act, 15 U.S.C. § 77e. ECF No. 1. It additionally alleged violations of Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), and Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2), against Shern and the Promoter Defendants. *Id*. In short, the SEC alleged that Defendants were the architects and top U.S. promoters of "CKB," a multi-national pyramid scheme made up of several collective entities, that purported to be a legitimate multi-level marketing company ("MLM") selling educational software.

The Complaint sought relief in the form of: temporary, preliminary and permanent injunctions against further violations of the statutes and rules Defendants are alleged to have violated; disgorgement by the Defendants and Relief Defendants of all the money received as a result of the unlawful conduct alleged in the Complaint, plus pre-judgment interest; an accounting; an order compelling Defendants to pay a penalty; and such other and further relief as the Court deems just and proper. *Id*. The Court entered a temporary restraining order, asset freezes, and other emergency relief—including requiring each Defendant to provide a verified accounting—against all Defendants and Relief Defendants the day the Complaint was filed.

---

[1] That Complaint included the Defendants named in this Order, as well as additional Defendants Heywood Chang, Toni Chen, Kiki Lin, Wendy Lee, and Heidi Mao, as well as Relief Defendants USA Trade Group, Inc., E Stock Club Corp., EZ Stock Club Corp., HTC Consulting LLC, and Arcadia Business Consulting, Inc. The Court has already entered Final Judgment against these additional Defendants. *See* ECF Nos. 253, 358, 359, 396, 397, 433, 455.

ECF No. 12.  Preliminary injunctions were later entered against all Defendants and Relief Defendants.  ECF Nos. 36, 69, 70, 71.

On July 10, 2015, the Court entered judgment on all claims against Santos, who admitted liability.  ECF No. 252 ("Santos Order").  The Santos Order enjoined her from violating the securities laws and from participating, directly or indirectly, "in any marketing or sales program involving a security."  *Id*. ¶ 2.  The Santos Order also stated that the Court would, at a later date and on a motion by the SEC, order disgorgement, prejudgment interest, and a civil penalty as to Santos.  *Id*. ¶ 3.

On July 29, 2015, the clerk entered a default against the Entity Defendants.  *See* ECF Entry, July 29, 2015 ("Clerk's Entry of Default").

On September 28, 2016, the Court granted the SEC's Motion for Summary Judgment on all claims against Shern, Leung, Guo, Lin and Ma, and the additional Defendants not subject to this Order.  ECF No. 363 ("Summary Judgment").

As this case currently stands, discovery is complete, and liability has been determined for all entity and individual Defendants.  *See* ECF No. 462 (Joint Status Report).  On May 26, 2022, the SEC filed the instant Motion seeking financial and other remedies against the five Entity Defendants, the remaining six individual Defendants as to whom final judgment has not been entered, and the remaining two Relief Defendants.  ECF No. 460.  Defendants Santos, ECF No. 459, and Guo, ECF Nos. 463, 465, oppose the Motion.

## II. Discussion

The SEC seeks a Final Judgment that:

1. Permanently restrains and enjoins:

3

    a.    Defendants, except for Santos,[2] from further violations of Sections 5 and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder;

    b.    Defendants Shern, Guo, Lin, and Ma from further violations of Section 15(a) of the Exchange Act; and

    c.    Defendants Shern, Leung, Guo, Lin, and Ma from directly or indirectly, including, but not limited to, through any entity owned or controlled by them, offering, operating or participating in any marketing or sales program involving a security, including but not limited to a program in which a participant is compensated or promised compensation solely or primarily for inducing another person to become a participant in the program, or if such induced person induces another to become a participant in the program.

2. Orders all Defendants and Relief Defendants to disgorge, and pay prejudgment interest thereon, the ill-gotten gains received as a result of the unlawful conduct found by the Court, or admitted to, in amounts set forth below;

3. Orders all Defendants, except Guo, to pay civil monetary penalties pursuant to Section 20(d)(1) of the Securities Act, and Section 21(d)(3) of the Exchange Act.

ECF No. 460.

The Court will first address the requested injunctive relief followed by the disgorgement and other monetary remedies.

    **A. Injunctions Against Further Violations of Securities Laws**

---

[2]     Santos has already consented to a permanent injunction.  *See* ECF No. 252 ¶ 2.

Both the Securities Act and the Exchange Act give the Court authority to grant a permanent injunction. *See* 15 U.S.C. § 77t(b); *see also* 15 U.S.C. § 78u(d)(1). "[T]o show such injunctive relief is warranted, the SEC must demonstrate that there is a substantial likelihood of future violations of illegal securities conduct." *SEC v. Genovese*, 553 F. Supp. 3d 24, 45 (S.D.N.Y. 2021) (quoting *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998) (internal quotation marks omitted)). To do this, courts consider: (1) whether a defendant has been found liable for illegal conduct; (2) what level of scienter defendant acted with; (3) whether defendant's past fraudulent acts were an isolated occurrence; (4) if the defendant has acknowledged his wrongdoing; and (5) whether future violations are likely. *SEC v. Nadel*, No. 11-cv-215, 2016 WL 639063, at *5 (E.D.N.Y. Feb. 11, 2016), *report and recommendation adopted*, 206 F. Supp. 3d 782 (E.D.N.Y. 2016); *Cavanagh,* 155 F.3d at 135.

After consideration of these various factors, the Court finds that they all weigh in favor of enjoining the Entity Defendants, Shern, Guo, Lin, and Ma.[3] First, the Court has already found the individual Defendants liable on all claims, *see* ECF No. 363 , and the Entity Defendants have defaulted. *See* ECF Entry, July 29, 2015.

Second, the Court has also found that all individual Defendants operated with a high degree of scienter during their time working with or for CKB. *See* ECF No. 363 at 32–33 (finding that Shern and Leung were aware of CKB's fraudulent nature), 35 (finding that Promoter Defendants were aware that their claims regarding CKB were false). The Entity Defendants can be said to have operated with the same degree of scienter as their officers, if those officers were "acting within the scope of [their] apparent authority." *SEC v. Universal*

---

[3] No Defendant other than Guo has opposed the SEC's Motion for injunctive relief. *See* ECF No. 463.

5

*Express, Inc.*, 475 F. Supp. 2d 412, 424 n.4 (S.D.N.Y. 2007), *aff'd sub nom. SEC v. Altomare*, 300 F. App'x 70, 71 (2d Cir. 2008). There is no dispute that the Entity Defendants were controlled by Defendants Shern and Leung and used as a means to carry out the scheme. *See* ECF Nos. 244, 245, 327, 328. Thus, the scienter of Shern and Leung can be imputed to the Entity Defendants.

Third, this was not an isolated incident. The Court found Defendants regularly engaged in and/or promoted this fraudulent scheme over a period of two years. *See* ECF No. 363 at 9–21 (discussing Defendants' specific conduct and roles in the scheme over the period CKB was active).

Fourth, except for Santos[4] and Guo,[5] it is undisputed that "[n]o defendant has renounced his, her, or its misconduct," ECF No. 460-2 at 12, and thus there is no evidence that those Defendants recognize the wrongful nature of their conduct.

Finally, the Court finds that there is a significant likelihood of future violations. Shen, Leung, Lin, and Guo have a history of being involved in other MLM schemes, and so it is reasonable to conclude that barring an injunction they could do so again. ECF No. 460-2 at 12–13. While no such evidence has been alleged for Defendant Ma, she has experience working in securities, something that other courts have found weighs in favor of granting injunctive relief. *See SEC v. Curative Biosciences, Inc.*, No. 18-cv-925, 2020 WL 7345681, at *3 (C.D. Cal. Oct.

---

[4] Santos' contrition, while welcome, is irrelevant here as she has already consented to permanent injunctions. *See* ECF No. 252.

[5] Since the SEC filed the Motion, Defendant Guo, proceeding *pro se*, filed two letters on the docket. *See* ECF Nos. 463, 465. In his first letter, he states "I am deeply remorseful for any harm I have caused others. I should have ma[d]e better informed [sic] about CKB before promoting it." ECF No 463 at 1. However, Defendant Guo then spends the rest of his response, and the entirety of his second letter, seemingly relitigating his culpability. The Court is not satisfied that these letters reflect recognition of the wrongful nature of his conduct.

22, 2020) (citing *SEC v. Baccam*, No. 17-cv-172, 2017 WL 5952168, at *9 (C.D. Cal. June 14, 2017) (finding that the defendant's "more than a decade of experience in the securities industry" raised the possibility that he would engage in future misconduct)).

The Court finds that these factors all weigh in favor of granting the SEC's requested injunctive relief.  Accordingly, the Court will enter a permanent injunction enjoining Defendants WIN168 Biz Solutions Ltd., CKB168 Holdings, Ltd., CKB168 Ltd., CKB168 Biz Solution, Inc., Cyber Kids Best Education Ltd., Shern, Leung, Guo, Lin and Ma from further violations of Section 10(b) and Rule 10b-5 of the Exchange Act and Sections 5 and 17(a) of the Securities Act.  The Court will also enter a permanent injunction enjoining Defendants Shern, Guo, Lin, and Ma from violating Section 15(a) of the Exchange Act.

### B.  Conduct-Based Injunction

The Court has wide discretion to impose a conduct-based injunction in SEC actions.  Here, the SEC argues that "Defendants' egregious conduct and high degree of scienter, the scope of the fraud, their lack of contrition and their connection to MLMs" make such an injunction appropriate.  ECF No. 460-2 at 14 (quotation marks omitted).  For the same reasons laid out in Section II.A, *supra*, the Court finds this argument persuasive.  Except for the letters from Defendant Guo, *see* ECF Nos. 463, 465, who does not specifically address this issue, the SEC's Motion is unopposed.  Therefore, the Court will enter a permanent injunction prohibiting Defendants Shern, Leung, Guo, Lin, and Ma from offering, operating, or participating in any marketing or sales program involving a security.

### C.  Disgorgement, Prejudgment Interest and Civil Penalties
#### 1.  Disgorgement and Prejudgment Interest

7

While district courts have broad discretion both in determining whether to order disgorgement and in calculating the amount to be disgorged, *SEC v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014), they may not enter "disgorgement awards that exceed the gains made upon any business or investment" and should "deduct legitimate expenses before ordering disgorgement." *Liu v. SEC*, 140 S. Ct. 1936, 1949–50 (2020) (internal quotation marks and citations omitted). However, courts have recognized that "separating legal from illegal profits exactly may at times be a near-impossible task." *SEC v. de Maison*, No. 18-cv-2564, 2021 WL 5936385, at *2 (2d Cir. Dec. 16, 2021) (internal quotation marks omitted). Thus, "the amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation, and any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (internal quotation marks omitted). Once the SEC establishes a reasonable approximation of the profits causally related to the fraud, the burden shifts to the Defendant to "clearly [] demonstrate that the disgorgement figure was not a reasonable approximation." *Id.* (internal quotation marks omitted).

Here, the SEC has used Defendants' verified accountings and back-office records to calculate the appropriate disgorgement totals. *See* ECF No. 460-2 at 15–19, *see also* ECF No. 47 (verified accountings), ECF No. 311-5 (Kam Lee declaration), ECF No. 460-3 (Supplemental Declaration of Devon Staren). It has asked for the architects of the scheme, Shern and Leung, as well as the Entity Defendants, to disgorge the proceeds of the illicit scheme, minus distributions. ECF No. 460-2 at 15–17; *see, e.g.*, *SEC v. McGinn, Smith & Co., Inc.*, No. 10-cv-457, 2015 WL 12780597, at *13 (N.D.N.Y. Feb. 17, 2015) (ordering a similar disgorgement). It has asked the Promoter Defendants to disgorge their commissions less the original investments they made before they could have known the scheme was fraudulent. ECF No. 460-2 at 17–18; *see, e.g.*,

8

*SEC v. Dang*, No. 20-cv-1353, 2021 WL 1550593, at *6–7 (D. Conn. Apr. 19, 2021) (ordering a similar disgorgement). It has asked Santos to disgorge the payments she received from the scheme less her original investment. ECF No. 460-2 at 19. It has asked the Relief Defendants to disgorge their ill-gotten funds to which they have no legitimate claim, *see Nadel*, 2016 WL 639063, at *27 (discussing when a relief defendant may be subject to disgorgement), and to each be jointly and severally liable with its associated Promoter Defendant for disgorgement of the funds transferred to that Relief Defendant so as to ensure the total disgorgement does not exceed the associated promoter's actual proceeds. ECF No. 460-2 at 18–19; *see also SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) (prohibiting disgorgement that exceeds proceeds); *see, e.g., Curative Biosciences*, 2020 WL 7345681, at *7 (holding relief defendants jointly and severally liable with defendants for the amount transferred to each relief defendant).

The Court is satisfied that the SEC has established a reasonable approximation of the profits causally related to the fraud. No Defendant except for Santos has filed an opposition suggesting that the disgorgement figure is not reasonable.

Santos requests that her disgorgement amount be reduced by $150,000 because CKB's payment to her of $150,000 was merely a repayment of her original investment of $150,000. ECF No. 451 at 14. The SEC has already reduced its proposed disgorgement figure of $667,231 by $150,000 to account for this.[6] Santos does not assert that the SEC miscalculated the total funds CKB paid to her, nor does she contest the SEC's contention in any other way. Therefore, the Court declines to grant Defendant Santos' request for an additional $150,000 reduction.

Santos further requests that her disgorgement amount be reduced by $399,710 because she allegedly used this sum to develop a game titled Memory Max, which CKB intended to use

---

[6]   The total amount that Santos was paid by CKB was $817,231. *See* ECF No. 425-3 ¶ 5.

9

as an educational tool for children in Hong Kong and China. *See* ECF No. 459 at 14–15. As noted above, courts are required to deduct legitimate expenses from disgorgement awards. *See Liu*, 140 S. Ct. at 1950. However, the Supreme Court has also carved out an exception to that requirement where the "entire profit of a business or undertaking" results from wrongful activity. *Id.* at 1945, 1950.

Santos has not provided any evidence that she used the funds CKB paid her for expenses incurred in developing Memory Max. Even if she could provide such evidence, however, the Court would decline to deduct the total of these expenses from the disgorgement award because Santos has failed to show that developing Memory Max involved legitimate expenses. She offers no evidence that Memory Max was used as an educational tool by children, rather than a tool to solicit new investors in order to perpetuate the illegal pyramid scheme. She has already admitted she knew Memory Max was released for "sale" more than a year before it was complete. *See* ECF No. 252 ¶ 21. The Court therefore finds that any funds spent developing the game are "merely wrongful gains under another name." *Liu*, 140 S. Ct. at 1950 (internal quotation marks omitted).

The SEC further requests that Defendants be ordered to pay prejudgment interest in addition to disgorgement. *See* ECF No. 460-2 at 20. The question of whether to award prejudgment interest in addition to disgorgement is left to the "broad discretion" of the district court. *SEC v. Westport Cap. Markets, LLC*, 547 F. Supp. 3d 157, 170 (D. Conn. 2021). It is a decision "governed by the equities, reflecting considerations of fairness rather than a rigid theory of compensation," with the goal of "depriv[ing] the wrongdoer of the benefit of holding the illicit gains over time by reasonably approximating the cost of borrowing such gain from the government." *Id.* (quoting *Contorinis*, 743 F.3d at 307–08). Courts generally consider the

following when deciding whether to award prejudgment interest: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *SEC v. Arias*, No. 12-cv-2937, 2021 WL 7908041, at *7 (E.D.N.Y. Nov. 11, 2021) (quoting *First Jersey*, 101 F.3d at 1476). In cases such as this one, courts have often found that the equities weigh in favor of awarding prejudgment interest, and no Defendant offers a reason why prejudgment interest should not be awarded. *See, e.g.*, *id.* at *7 (ordering prejudgment interest to ensure defendants are not "unjustly enriched by an interest-free use of the funds they fraudulently obtained from investors").

Additionally, the Court finds the SEC's calculations to be reasonable. The SEC has properly accounted for: (i) Defendants' frozen assets, *see SEC v. Razmilovic*, 738 F.3d 14, 36–38 (2d Cir. 2013) (finding that the SEC may not recover prejudgment interest on assets that were frozen pursuant to a Court order); (ii) Defendants' initial investment, *see Liu*, 140 S. Ct. at 1949–50 (requiring disgorgement awards to be discounted by any initial investment); (iii) the additional time that has elapsed; and (iv) the IRS underpayment rate—a generally accepted rate of interest, *see Westport Cap. Markets*, 547 F. Supp. 3d at 171—to calculate prejudgment interest in this case. *See* ECF No. 460-2 at 20.

Accordingly, the Court finds:

- Defendants CKB168 Holdings Ltd., WIN168 Biz Solutions Ltd., CKB168 Ltd., CKB168 Biz Solution, Inc., Cyber Kids Best Education Ltd., Shern, and Leung are jointly and severally liable for $178,749,545, consisting of:
    - disgorgement of $137,238,985; and

- o prejudgment interest of $41,510,560.
- Defendant Santos is liable for a total of $883,680, consisting of:
  - o disgorgement of $667,231; and
  - o prejudgment interest of $216,449.
- Defendant Guo and Relief Defendant Rosanna LS Inc. are jointly and severally liable for $5,133,651, consisting of:
  - o disgorgement of $3,979,867,
  - o prejudgment interest of $1,153,784.
- Defendant Lin and Relief Defendant Ouni International Trading Inc. are jointly and severally liable for $2,359,315, consisting of:
  - o disgorgement of $1,893,114,
  - o prejudgment interest of $466,201.
- Defendant Ma is liable for $975,274, consisting of:
  - o disgorgement of $975,274.[7]

## 2. Civil Penalties

In addition, the SEC seeks civil penalties against all Defendants except Guo. The Securities Act and the Exchange Act each grant the Court the authority to impose penalties for violations of these acts. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3). There are three tiers of penalties that can be imposed. The third tier is the most severe, available when violations (1) involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial

---

[7] The SEC has not assessed any prejudgment interest against Defendant Ma, as her total frozen assets exceed the amount the SEC is requesting from her in disgorgement. ECF No. 460-2 ¶ 2.

12

losses to other persons." *See Razmilovic*, 738 F.3d at 38 (citing 15 U.S.C. §§ 77t(d), 78u(d)(3)). When considering third-tier penalties "for each violation, the amount of penalty shall not exceed the greater of [1] a specified monetary amount or [2] the defendant's gross amount of pecuniary gain." *Arias*, 2021 WL 7908041, at *8 (citing *Razmilovic*, 738 F.3d at 38) (internal quotation marks omitted). In addition, "civil penalty statutes require that such awards be based on the pecuniary gain of each defendant and do not allow the penalties to be imposed jointly and severally." *Id.* (citing *SEC v. Pentagon Cap. Mgmt., PLC*, 725 F.3d 279, 287–88 (2d Cir. 2013)).[8] The "disgorgement amount is a helpful starting point for calculating that defendant's gross pecuniary gain." *Id*. (internal quotation marks and citation omitted).

Beyond these restrictions regarding the maximum penalty, the Court has broad discretion in setting the amount. *See Razmilovic*, 738 F.3d at 38. In exercising its discretion, the Court may consider the following factors: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *SEC v. Malik*, No. 15-cv-1025, 2016 WL 670032, at *2 (S.D.N.Y. Feb. 9, 2016) (citing *SEC v. Tourre*, No. 10-cv-3229, 2014 WL 969442, at *11 (S.D.N.Y. Mar. 12, 2014)); *see also SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007).

---

[8]    In addition, "gross pecuniary gain may only include gains from frauds occurring within the five-year statute of limitations for civil penalties." *Arias*, 2021 WL 7908041, at *8; *see also Gabelli v. SEC*, 568 U.S. 442, 446–48 (2013). As CKB's scheme began less than five years before the SEC initiated this action, this limitation is not at issue here.

13

The Court has already taken most of these factors into account when discussing whether to grant a permanent injunction against Defendants in Section II.A, supra, and finds they weigh in favor of civil penalties.

### i. *Shern, Leung, Lin, Ma, and the Entity Defendants*

Shern and Leung egregiously orchestrated an illegal scheme which collected hundreds of millions of dollars from investors, most of whom suffered substantial losses on their investment. *See* ECF No. 363 at 26. Promoter Defendants Lin and Ma aggressively marketed the scheme to potential investors, even after they knew it was a fraud. ECF No. 363 at 35. Neither Shern, Leung, Lin, nor Ma have expressed remorse, nor have they refuted the SEC's calculations of what civil penalty is appropriate. ECF No. 460-2 at 12. Under these circumstances, a third-tier penalty based on the pecuniary gain of each Defendant is reasonable to deter future violations. *See., e.g.*, *SEC v. Enrenkrantz King Nussbaum, Inc.*, No. 05-cv-4643, 2013 WL 831181, at *6–7 (E.D.N.Y. Feb. 14, 2013).

The Court thus agrees with the SEC's recommendations and orders Defendants Shern and Leung to pay a penalty equal to ten percent of their joint and several disgorgement, or $13,700,000 each. It will order the Entity Defendants, who were controlled and directed by Shern and Leung, *see* ECF Nos. 244, 245, 327, 328, to pay the maximum statutory penalty of $775,000 for a corporation.. 15 U.S.C. § 78u(d); 17 C.F.R. § 201.1001. It will order that Defendants Lin and Ma pay a penalty equal to their disgorgement—$1,893,114 for Lin and $975,274 for Ma.

### ii. *Santos*

14

Only Defendant Santos has requested that the Court reduce the SEC's requested penalty.[9] Her initial objections relate primarily to the egregiousness of her conduct and/or her degree of scienter. *See* ECF No. 459 at 10 ("[s]he made a mistake in judgment in her only foray into public companies and certain co-defendants took advantage of her naiveté"). Under Sections 5(a) and (c), and 17(a)(1) and (3) of the Securities Act, scienter can be proven through "strong circumstantial evidence of conscious misbehavior or recklessness." *See Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Santos admits in her opposition that she acted with a degree of recklessness sufficient to establish scienter. *See* ECF No. 459 at 15. It is true that she has shown contrition, and that should be taken into account. However, it appears the SEC has already taken Santos' cooperation and contrition into account by seeking the smaller statutory penalty rather than seeking a penalty equal to her disgorgement. *See* ECF No. 461 at 4 (noting the SEC is "seeking a reduced penalty of only $160,000" as acknowledgement of "Santos' cooperation and acceptance of liability").

Santos' additional objections relate to her ability to pay. *See* ECF No. 459 at 11 ("The SEC's recommended penalty reflects a First World penalty scale that is detached from the reality of Ms. Santos' Third World situation."). However, she has not provided documentation to support that assertion. *See SEC v. Spongetech Delivery Sys., Inc.*, No. 10-cv-2031, 2015 WL 5793303, at *11 (E.D.N.Y. Sept. 30, 2015) (imposing maximum third-tier penalties because, although the defendant claimed inability to pay, he "failed to make any showing regarding his actual financial condition" and did "not support[] his claims with any documentation"). The

---

[9] Defendant Santos does not seek to waive the penalty, as she has already agreed in her Consent Agreement that the Court would impose some civil monetary penalty. *See* ECF No. 252 ¶ 3.

Court thus agrees with the SEC's request for the imposition of a one-time, third-tier statutory penalty. Therefore, the Court finds Defendant Santos is liable for a $160,000 penalty.[10]

### III. Conclusion

For the foregoing reasons, the SEC's Motion is GRANTED. A separate final judgment will follow.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
August 12, 2022

---

[10] For violations occurring between March 6, 2013, and November 2, 2015, the maximum statutory penalty for natural persons is $160,000 for a third-tier violation. *See* 17 C.F.R. § 201.1001, Table 1.